UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DAMIAN MEDICI, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 16-cv-10289-ADB |
| | * | |
| LIFESPAN CORP., RHODE ISLAND | * | |
| HOSPITAL, and MICHAEL SUSIENKA, | * | |
| | * | |
| Defendants. | * | |
| | * | |

**MEMORANDUM AND ORDER**
**GRANTING MOTION TO DISMISS IN PART**

BURROUGHS, D.J.

Plaintiff Damian Medici filed his complaint on February 17, 2016, alleging that Defendants violated contractual obligations and federal regulations while investigating him for research misconduct, resulting in the loss of his employment and research grants. [ECF No. 1]. On April 8, 2016, Defendants filed a motion to dismiss, arguing that the Court lacks personal jurisdiction over some of the defendants and that Plaintiff failed to exhaust his administrative remedies. [ECF No. 11]. The Court held a hearing on the motion on November 17, 2016. Following the hearing, Plaintiff voluntarily dismissed two individual defendants, Peter Snyder and John Murphy. [ECF No. 33]. For the reasons stated below, the Court grants the motion to dismiss in part. Rhode Island Hospital is dismissed as a defendant, and the case is stayed pending the outcome of the administrative agency review.

## I.     BACKGROUND

### A.     Factual Background[1]

Medici is a research scientist in the field of cell biology. He received graduate training at Harvard University and worked in various laboratories at Harvard for ten years. In 2012, Lifespan Corporation recruited Medici from Harvard to take a position at Rhode Island Hospital ("RIH"), which is affiliated with Lifespan. Medici began working for Lifespan in July 2012 as an at-will employee. In this position, he led his own laboratory, researching cell biology and regenerative medicine. Medici subsequently entered into a new employment contract with Lifespan that was to be in effect from January 1, 2014 through June 30, 2019. During the term of the contract, Lifespan was only entitled to terminate Medici's employment "for cause." In addition to his research position at the hospital, Medici was also appointed as an assistant professor of medicine at Brown University.

Medici alleges that in early 2014, Michael Susienka, a Brown University graduate student who had been working in Medici's laboratory, attempted to use Medici as a scapegoat for the fact that Susienka, a doctoral student, was struggling. Medici alleges that Susienka broke into Medici's locked office, accessed his computer without authorization, and took unpublished manuscripts and data files without permission. Medici also claims that Susienka tampered with image files to support false allegations of misconduct. Susienka then approached Peter Snyder, the chief research officer of Lifespan, to accuse Medici of misconduct. Susienka's allegations focused on manuscripts describing research that Medici performed at Harvard, in which Medici may have used incorrect images. Medici claims that incorrect images in research papers due to clerical errors are not uncommon in the field.

---

[1] The facts set forth in this section are taken from the complaint.

In April 2014, Snyder convened a committee to investigate the allegations of misconduct. Medici claims that Snyder was biased against Medici and that he had "enlisted" Susienka to try to "set up" Medici by tampering with activities in his laboratory. On April 9, 2014, Snyder informed Medici that an inquiry committee had been convened and indefinitely suspended Medici pending the results of the inquiry. The committee interviewed Medici on April 21, 2014. On May 6, 2014, Snyder sent Medici a letter with the inquiry committee's report, which recommended a formal investigation.

An investigation committee was convened in May 2014. The committee interviewed Medici on October 7, 2014. On May 20, 2015, the investigation committee issued its preliminary report, which made a finding that Medici had committed research misconduct. Medici submitted a response on July 3, 2015. On August 18, 2015, Medici received the committee's final report, and he was notified on September 9, 2015 that his employment with Lifespan would be terminated effective September 24, 2015.

Medici alleges that the inquiry and investigation procedure violated federal regulations and general due process expectations in a number of respects. As examples, Medici asserts that Snyder exercised undue influence over the investigation, that Medici was not given adequate notice of the inquiry nor a sufficient opportunity to respond, that his suspension violated procedural requirements, that the defendants attempted to destroy the audio recording of his April 21, 2014 interview, that the transcripts of his October 7, 2014 interview contained an "overwhelming" number of errors, and that the investigation was not completed within the required 90-day timeframe. Medici also alleges that Snyder and others failed to keep the investigation confidential, in violation of regulatory requirements. Medici claims that the inquiry

committee and investigation committee credited fraudulent evidence and ignored exculpatory evidence, and thus, the finding of misconduct was unreasonable.

Medici further alleges that the suspension, and ultimately termination, of his employment caused serious damage to his career. The grants that Medici had received were reassigned, and he has been unable to perform research. He is also unable to access data to apply for new grants, and does not have a host institution through which to apply for grants. The allegations made against him, and the finding of misconduct, has damaged his reputation to the point that he may not be able to acquire federal funding again. Furthermore, without grant funding, Medici is unlikely to be able to transition to another academic institution.

Medici's complaint alleges breach of contract and the implied covenant of good faith and fair dealing; defamation; tortious interference with advantageous relations; intentional infliction of emotional distress; and violations of the Stored Communications Act, 18 U.S.C. § 2701 *et. seq*.

**B.     Parties[2]**

The following facts are relevant to the jurisdictional dispute.

Defendant Lifespan is a corporation organized under the laws of Rhode Island, with a principal place of business in Providence, Rhode Island. Lifespan's website includes statements indicating that it serves not only Rhode Island, but all of southern New England. For instance, its mission statement is to improve the health status of "the people in Rhode Island and southern New England," and that it serves "between 25,000 and 30,000 southern New Englanders

---

[2] The facts in this section are drawn from exhibits submitted by Medici in support of his opposition to the motion to dismiss, [ECF Nos. 18, 18-1–18-15], as well as from the complaint [ECF No. 1]. As discussed below, for the purposes of establishing jurisdiction, the plaintiff bears the burden of proffering evidence that, if credited, would demonstrate that jurisdiction exists. See Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008).

annually." Lifespan also describes itself as "a comprehensive health system providing accessible, high-value services to the people of Rhode Island and southeastern New England." Its website states that Lifespan is a "health system" that was founded by RIH and another hospital.

Defendant RIH, a Rhode Island non-profit corporation located in and with its principal place of business in Providence, Rhode Island, is a private, 719-bed, acute care hospital. Its only corporate member is Lifespan. On its website, RIH describes itself as "a major trauma center for southeastern New England." RIH states that it is "a founding partner" of Lifespan. RIH's website also explains that RIH is "home to Hasbro Children's Hospital." In another area of its website, RIH describes Hasbro as "our pediatric division." According to the Massachusetts Board of Registration of Medicine, seventeen physicians registered to practice in Massachusetts are affiliated with RIH, four of whom indicate that they practice in Massachusetts.

Hasbro Children's Hospital is not named as a defendant in this action. The Hasbro website uses a logo directly beneath the Hasbro name which describes Hasbro as "The Pediatric Division of Rhode Island Hospital." Hasbro opened a multispecialty clinic in Fall River, Massachusetts in September 2014. Hasbro's website states that "[a] team of practitioners" from Hasbro is available to treat patients in the clinic. The website also explains that Hasbro has a partnership with Saint Anne's Hospital in Fall River, Massachusetts and Hasbro physicians care for patients at the Fernandes Center for Children & Families of Saint Anne's Hospital in Fall River.

Lifespan and RIH share some common officers and directors. Timothy Babineau is the president of Lifespan and a director of both Lifespan and RIH; Mary Wakefield is the treasurer of both Lifespan and RIH; Kenneth Arnold is the secretary for both Lifespan and RIH; Lawrence

Aubin, Sr. is the chairman of both Lifespan's and RIH's Board of Directors; and Alan Litwin is the vice chair of both Lifespan's and RIH's Board of Directors.

Lifespan and RIH were both parties to Medici's employment contract. The institution that received Medici's federal grant money was RIH. Snyder wrote a letter on Lifespan letterhead to the Director of the Division of Investigative Oversight at the Office of Research Integrity ("ORI") in the U.S. Department of Health and Human Services to inform the office of the initiation of the misconduct investigation concerning Medici. In the letter, Snyder stated that the investigation would occur at RIH. Former defendant John Murphy also used Lifespan letterhead when giving notice to ORI as to the final results of the investigation. The letter has a title referring to "Findings and Actions by Lifespan Corporation/Rhode Island Hospital." In the letter, Murphy states that he is the "Deciding Official" for Lifespan, of which RIH is "a member hospital."

## II.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendants argue that the Court lacks subject matter jurisdiction over this matter because Medici has failed to exhaust his administrative remedies. When a statutory scheme requires the exhaustion of administrative remedies, a district court lacks jurisdiction to hear the case until the administrative process is complete. See Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 207 (1994) (failure to exhaust administrative remedies "precludes district court jurisdiction"); Ne. Erectors Ass'n of BTEA v. Sec'y of Labor, Occupational Safety & Health Admin., 62 F.3d 37, 39 (1st Cir. 1995). Where Congress has not required exhaustion, the district court may, within its discretion, decline to exercise jurisdiction pending exhaustion. McCarthy v. Madigan, 503 U.S. 140, 144 (1992), superseded by statute on other grounds, 42 U.S.C. § 1997e(a). Medici responds

that he has no ability to petition the relevant administrative agency to take additional action, and

therefore, he has exhausted the administrative remedies available to him.

A.      **Statutory and Regulatory Scheme**

The Office of Research Integrity ("ORI") within the U.S. Department of Health and

Human Services ("HHS") is tasked with overseeing investigations into allegations of research

misconduct pertaining to research supported by federal funding. 42 U.S.C. § 289b. As directed

by statute, HHS has developed a detailed regulatory scheme for reviewing allegations of research

misconduct.

Under the regulations, the initial stages of a misconduct investigation occur within the

institution that received the funding. The institutional process occurs in two parts. First, if the

institution receives a "credible and specific" allegation of research misconduct, the institution

initiates an inquiry. 42 C.F.R. § 93.307. The purpose of an inquiry is to "to decide if an

allegation warrants an investigation." Id. The institution is required to complete the inquiry

within 60 days, at which time it must issue a written report. Id. That report is communicated to

ORI. Id. § 93.308–309.

If the inquiry finds that an investigation is warranted, such an investigation must begin

within 30 days after that determination. Id. § 93.310. The institution is obligated to perform an

"impartial and unbiased investigation" that is "thorough and sufficiently documented." Id. The

investigation must be completed within 120 days, unless ORI grants an extension. Id. § 93.311.

The institution is required to produce a final investigation report. Id. § 93.313. The institution

may provide for its own internal appeals process, but it is not required to do so. Id. § 93.314. At

the conclusion of the institutional process, the institution must transmit the investigation report

and findings to ORI. Id. § 93.315.

ORI is authorized to review misconduct proceedings. Id. § 93.403. ORI may consider any evidence and institutional findings, adduce additional evidence, evaluate the institution's review to ensure it was both procedurally and substantively adequate, and conduct its own analysis to reach a finding as to whether misconduct occurred. Id. When it completes its review, ORI can close the case without finding that research misconduct occurred, or make a finding of research misconduct and "propose[] and obtain[] HHS approval of administrative actions," or recommend that HHS attempt to settle the case. Id. § 93.404.

If ORI determines that the respondent committed misconduct, it notifies the respondent by sending a "charge letter." Id. § 93.405. The charge letter explains the basis for the finding and the proposed sanctions, and informs the respondent of the opportunity to object. Id. If the respondent wishes to contest the finding of research misconduct, he or she can request a hearing before an administrative law judge ("ALJ"). Id. § 93.501. The respondent has the option of being represented by counsel, and conducting discovery, including filing motions, presenting evidence, cross-examining witnesses, and presenting oral arguments. Id. § 93.505. After the hearing, the ALJ issues a written ruling, which is considered a recommended decision to the Assistant Secretary for Health. Id. § 93.523. The Assistant Secretary may review the ALJ's decision and modify or reject it if the Secretary determines it to be "arbitrary and capricious or clearly erroneous" in whole or in part. Id. If the Assistant Secretary does not notify the parties of an intention to review the decision within 30 days, the ALJ's decision becomes final. Id. An ALJ's decision that has become final, or a decision by the Assistant Secretary to modify or reject the ALJ's decision, constitutes the final HHS action in most cases. Id.[3]

---

[3] If debarment or suspension is recommended, the HHS debarring official makes the final HHS decision on debarment or suspension. 42 C.F.R. § 93.523.

B.      Administrative Exhaustion

A judge in this district recently addressed the question of whether the statutory and regulatory scheme described above requires the exhaustion of administrative remedies prior to filing a lawsuit, or alternatively, whether a district court may decline to exercise jurisdiction pending the exhaustion of administrative remedies. See Anversa v. Partners Healthcare Sys., Inc., 116 F. Supp. 3d 22 (D. Mass. 2015). In Anversa, the court determined that exhaustion is statutorily mandated, and it also concluded that the common law doctrine of administrative exhaustion should apply. Id. at 31–34. On review, the First Circuit bypassed the question of statutory exhaustion and decided that the court acted within its discretion in requiring administrative exhaustion. Anversa v. Partners Healthcare Sys., Inc., 835 F.3d 167, 175 (1st Cir. 2016). The First Circuit did reverse the district court's decision to dismiss, holding that ordinarily a case should be stayed, not dismissed, pending the outcome of the administrative process to prevent the statute of limitations from running while the plaintiffs await a decision from the agency. Id. at 179–80.

While Anversa is not binding on the outcome of the present motion, as the First Circuit only held that requiring administrative exhaustion is a permissible exercise of discretion, the Court agrees with the district judge's reasoning and concludes that this matter should be stayed pending the outcome of the administrative review process.

"The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law." McKart v. United States, 395 U.S. 185, 193 (1969). The exhaustion requirement "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." McCarthy, 503 U.S. at 145. Preserving agency authority is especially important where the administrative procedure allows the agency to apply its particular

expertise. <u>Anversa</u>, 835 F.3d at 175. "Insisting upon exhaustion not only gives an agency the first opportunity to apply that expertise and correct possible errors, but also respects congressional prerogative by 'prevent[ing] litigants from bypassing Congress' carefully crafted remedial scheme.'" <u>Id.</u> (quoting <u>Irizarry v. United States</u>, 427 F.3d 76, 79 (1st Cir. 2005)). Exhaustion also promotes judicial efficiency because the administrative process may provide adequate redress, and if not, the process creates "a useful record for subsequent judicial consideration." <u>Id.</u> (quoting <u>McCarthy</u>, 503 U.S. at 145).

Where Congress has not explicitly mandated exhaustion, courts have some freedom to relax the requirement. <u>Swirsky v. Nat'l Ass'n of Sec. Dealers</u>, 124 F.3d 59, 63 (1st Cir. 1997). There are "three broad sets of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion." <u>Id.</u> (quoting <u>McCarthy</u>, 503 U.S. at 146). "These exceptions are when the requirement occasions undue prejudice to subsequent assertion of a court action; where the agency is not empowered to grant effective relief; and when there are clear indicia of agency bias or taint." <u>Id.</u> (citing <u>McCarthy</u>, 503 U.S. at 146–48).

In this case, none of the three exceptions are present. Medici will be able to proceed with this lawsuit if he is not successful in the administrative process. Given that the First Circuit explained that a case should be stayed, not dismissed, in these circumstances, the only impact on this case will be delay. In terms of achieving effective relief through the administrative process, if the agency were to reverse the finding of misconduct, this would likely provide significant relief to Medici, and it would make it much easier for him to obtain any further relief through the judicial process.[4] Finally, Medici has not suggested that the agency process is biased or tainted in

---

[4] As the First Circuit discussed in <u>Anversa</u>, the inability to obtain money damages through the administrative process does not render exhaustion unnecessary. <u>Anversa</u>, 835 F.3d at 177. Regardless, Medici has not raised this issue here.

any way, nor is the Court aware of any reason why it would be.

Medici also argues that he has no right to demand that ORI review the institutional finding of misconduct, and he notes that an institution is permitted to adopt its own, broader standards of misconduct, so that the institution may find misconduct even where ORI would not. Certainly, it appears possible that ORI could decide not to review the misconduct finding against Medici, either because it agrees with the finding or because the finding is outside the scope of ORI review. In that situation, it is unclear whether ORI would communicate this decision to Medici. This possibility does not mean that there is no need for administrative exhaustion, however. Instead, the solution recognized in Anversa is fully appropriate here: the Court will stay the current proceedings to provide ORI an opportunity to review the misconduct finding. In the meantime, the Court will request regular status reports or status conferences so that the parties can keep it abreast of the progress of the ORI review. If it becomes apparent that an ORI review will not occur, or if there is no further information forthcoming once ORI is afforded adequate time to conduct its review, the Court will lift the stay and the litigation will proceed. The parties are directed to provide ORI with this memorandum and order, and the Court encourages ORI to make its intentions known to the parties as soon as possible so as not to unduly delay this litigation.

## III.   JURISDICTION

### A.   Standard of Review

Defendants also argue that the Court lacks personal jurisdiction over RIH.[5] The parties agree that the Court should use the prima facie method to evaluate whether it has jurisdiction over RIH. The prima facie standard is the most common method for determining whether the

_____

[5] Defendants additionally asserted that the Court lacks jurisdiction over John Murphy and Peter Snyder, however, Medici has since voluntarily dismissed those defendants. [ECF No. 33].

plaintiff has met his burden of proving that the Court has personal jurisdiction over the

defendant, Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007), and is appropriate in the context

of this case. "[T]he inquiry is whether the plaintiff has proffered evidence which, if credited, is

sufficient to support findings of all facts essential to personal jurisdiction." Phillips v. Prairie Eye

Ctr., 530 F.3d 22, 26 (1st Cir. 2008). The plaintiff is required to "adduce evidence of specific

facts." Id. (quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir.

1995)). The Court "must accept the plaintiff's (properly documented) evidentiary proffers as true

. . . and construe them in the light most congenial to the plaintiff's jurisdictional claim." Id.

(quoting Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir.

2002)).

### B.    Federal Question Jurisdiction

Medici first argues that the Court has federal-question jurisdiction because Medici is

asserting a claim pursuant to the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*, so the

Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over

the remaining claims pursuant to 28 U.S.C. § 1367. The fact that the Court may have *subject-*

*matter* jurisdiction, however, does not mean that the court necessarily has *personal* jurisdiction.

Lorelei Corp. v. Cty. of Guadalupe, 940 F.2d 717, 719 (1st Cir. 1991). The constitutional limits

of personal jurisdiction are "drawn in the first instance with reference to the due process clause

of the fifth amendment." Id. The fifth amendment "'permits a federal court to exercise personal

jurisdiction over a defendant in a federal question case if that defendant has sufficient contacts

with the United States as a whole,'" and "sufficient contacts exist whenever the defendant is

served within the sovereign territory of the United States." Id. (quoting Whistler Corp. v. Solar

Elecs., Inc., 684 F. Supp. 1126, 1128 (D. Mass. 1988)). This means "there is no direct

constitutional check on the district court's exercise of personal jurisdiction over a United States

resident in a federal question case." <u>Id.</u>

That being said, there is nonetheless a *statutory* limitation on the Court's jurisdiction. <u>Id.</u>

Pursuant to Fed. R. Civ. P. 4(k)(1), service of process establishes personal jurisdiction over a

defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where

the district court is located," or "when authorized by federal statute." In addition, Fed. R. Civ. P.

4(k)(2) authorizes extraterritorial service where a claim arises under federal law, "the defendant

is not subject to jurisdiction in *any* state's courts of general jurisdiction," *and* "exercising

jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2)

(emphasis added). Rule 4(k)(2) was intended to deal with the problem of exercising jurisdiction

over foreign defendants who have minimum contacts with the United States as a whole but not

with any individual state, which is not a concern here. <u>See</u> <u>United States v. Swiss Am. Bank,</u>

<u>Ltd.,</u> 191 F.3d 30, 40 (1st Cir. 1999).

Thus, pursuant to Rule 4(k)(1), the Court can only exercise jurisdiction over RIH if it

would be subject to the jurisdiction of Massachusetts courts or if the federal statute giving rise to

the cause of action authorizes nationwide jurisdiction. <u>See</u> <u>Lorelei</u>, 940 F.2d at 719–20

(discussing former language of Rule 4(e) and (f), which imposed the same limitations relevant

here). The Stored Communications Act does not authorize nationwide jurisdiction. <u>See</u> 18 U.S.C.

§§ 2707, 2711. The remaining question, then, is whether Massachusetts law would permit its

courts to exercise personal jurisdiction over RIH.[6] <u>United Elec., Radio & Mach. Workers of Am.</u>

---

[6] The Massachusetts Supreme Judicial Court "has interpreted the state's long-arm statute 'as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.'" <u>Phillips</u>, 530 F.3d at 26 (quoting <u>Daynard</u>, 290 F.3d at 52). Recent caselaw has suggested that the statute may be more restrictive than what the Constitution allows, <u>see</u> <u>Copia Commc'ns, LLC v. AMResorts, L.P.</u>, 812 F.3d 1, 4 (1st Cir. 2016), but Defendants have not raised that argument here.

v. 163 Pleasant St. Corp., 960 F.2d 1080, 1086 (1st Cir. 1992). State law is "subject to

Fourteenth Amendment limitations," so the minimum contacts doctrine "acts indirectly as a

governing mechanism for the exercise of personal jurisdiction." Id.[7] (citing Lorelei, 940 F.2d at

720).

### C.    General Jurisdiction

Personal jurisdiction can be either general or specific. Harlow v. Children's Hosp., 432

F.3d 50, 57 (1st Cir. 2005). To establish general jurisdiction, "the defendant must have

continuous and systematic contacts with the state," those contacts must be purposeful, and an

exercise of jurisdiction must be reasonable. Id. Here, Medici claims that the Court has general

jurisdiction over RIH because RIH operates Hasbro Children's Hospital, which has two locations

in Fall River, Massachusetts. RIH's website describes Hasbro as its pediatric division. In

addition, 17 physicians in Massachusetts are affiliated with RIH, four of whom indicate that they

practice in Massachusetts. Defendants respond that RIH has no employees and owns no property

in Massachusetts, but under the prima facie method, the Court must take the facts presented by

Medici as true for the purposes of evaluating jurisdiction unless the facts alleged are implausible,

which is not the case here.

The parties have focused their arguments on two key First Circuit cases concerning

general jurisdiction, Harlow and Cossaboon v. Me. Med. Ctr., 600 F.3d 25 (1st Cir. 2010). In

both cases, the court found that the defendant did not have the "continuous and systematic

contacts" with the forum state required to establish general jurisdiction. At the same time, the

cases suggest that more regular contacts—like those made through Hasbro, which maintains two

---

[7] Medici relies on quotations from United to support his argument, but as Defendants note,
United reached the same conclusion as Lorelei: that minimum contacts with the United States as
a whole are insufficient to establish personal jurisdiction in a federal-question case, absent
explicit statutory authorization. United, 960 F.2d at 1085–86.

permanent offices in Massachusetts and employs people at those offices—could suffice. In the

wake of two recent Supreme Court opinions, however, it appears that the test for establishing

general jurisdiction has become considerably more stringent.[8]

      In Goodyear, the Supreme Court stated that "[f]or an individual, the paradigm forum for

the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an

equivalent place, one in which the corporation is fairly regarded as at home." Goodyear Dunlop

Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011). Later, in Daimler, the court

explained that the inquiry is not just whether the in-forum contacts are "continuous and

systematic," but rather, "whether that corporation's 'affiliations with the State are so continuous

and systematic as to render [it] essentially at home in the forum State.'" Daimler AG v. Bauman,

134 S. Ct. 746, 761 (2014) (quoting Goodyear, 564 U.S. at 919). With respect to a corporate

defendant, the court stated that "the place of incorporation and principal place of business are

paradigm bases for general jurisdiction." Id. at 760 (quotation omitted). The court allowed that

there may be an "exceptional case" where general jurisdiction could be proper in a state other

than one where a corporation is incorporated or has its principal place of business, but the court

did not explain what would constitute such an exceptional situation. Id. at 761 n.19. The court

cast its reasoning as consistent with prior caselaw, id. at 753–58, but in a concurrence, Justice

Sotomayor described the approach as a "new rule" that diverges from previous decades of

precedent, id. at 770–71 (Sotomayor, J., concurring).

      It does not appear that the First Circuit has yet had the opportunity to discuss the

implications of Goodyear and Daimler in evaluating general jurisdiction. Several district courts

within this circuit have recognized that the test set forth in those cases is more stringent than the

---

[8] For this reason, Harlow and Cossaboon may no longer provide adequate guidance on the law concerning general jurisdiction.

previous general jurisdiction standard, and consequently have found that general jurisdiction was

lacking because a corporate defendant was not "essentially at home" in the forum state. See

Forrester Winne v. Nat'l Collegiate Student Loan Tr. 2005-1, No. 1:16-CV-00229-JDL, 2017

WL 108008, at *4 (D. Me. Jan. 11, 2017); Adams v. New Eng. Scaffolding, Inc., No. CV 13-

12629-FDS, 2016 WL 6514090, at *2 (D. Mass. Oct. 28, 2016); Presby Pat. Tr. v. Infiltrator

Sys., Inc., No. 14-CV-542-JL, 2015 WL 3506517, at *4–6 (D.N.H. June 3, 2015); Bulwer v.

Mass. Coll. of Pharm. & Health Scis., No. 1:13-CV-521-LM, 2014 WL 3818689, at *5–6

(D.N.H. Aug. 4, 2014). In addition, the Second Circuit recently explained that, "in our view

Daimler established that, except in a truly 'exceptional' case, a corporate defendant may be

treated as 'essentially at home' only where it is incorporated or maintains its principal place of

business." Brown v. Lockheed Martin Corp., 814 F.3d 619, 627 (2d Cir. 2016). That court noted

that "at least three of our sister circuits have agreed with this reading of Daimler." Id. (citing

Kipp v. Ski Enter. Corp. of Wis., 783 F.3d 695, 698 (7th Cir. 2015); Martinez v. Aero Caribbean,

764 F.3d 1062, 1070 (9th Cir. 2014); Monkton Ins. Servs., Ltd. v. Ritter, 768 F.3d 429, 432 (5th

Cir. 2014)).

    Applying the Daimler test to this case, it is clear that the Court cannot exercise general

jurisdiction over RIH. Medici concedes that RIH is incorporated under Rhode Island law and has

its principal place of business in Rhode Island. Nothing in the facts set forth by Medici suggests

that RIH is "essentially at home" in Massachusetts or that this is an "exceptional" case such that

the exercise of general jurisdiction would be appropriate. Rather, this appears to be precisely the

type of case where general jurisdiction may have been permissible before Daimler, but no longer.

For example, the facts of Bulwer, which followed Daimler, were somewhat similar: an out-of-

state university maintained a satellite campus in the forum state, where about six percent of the

university's students took classes. <u>Bulwer</u>, 2014 WL 3818689, at *5–6. The court nevertheless

found that it lacked general jurisdiction over the university. <u>Id.</u> at *6. Similarly, here RIH

maintains two locations in Massachusetts, employs people in Massachusetts, and serves some

proportion of its patients in Massachusetts.[9] Although this may be enough to constitute

"continuous and systematic contacts" with Massachusetts, it does not establish that RIH is

"essentially at home" here. Therefore, the Court cannot exercise general jurisdiction over RIH.

### D.      Specific Jurisdiction

Where the Court lacks general jurisdiction, specific jurisdiction can also establish

sufficient contacts to permit the exercise of personal jurisdiction. "Specific jurisdiction exists

when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based

activities." <u>United States v. Swiss Am. Bank, Ltd.</u>, 274 F.3d 610, 618 (1st Cir. 2001) (quoting

<u>Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n</u>, 142 F.3d 26, 34 (1st Cir. 1998)). The due

process clause requires that the defendant must have "sufficient minimum contacts with the state,

such that 'maintenance of the suit does not offend traditional notions of fair play and substantial

justice.'" <u>Adelson v. Hananel</u>, 510 F.3d 43, 49 (1st Cir. 2007) (quoting <u>Int'l Shoe Co. v. St. of

Wash., Off. of Unemp't Comp. & Placement</u>, 326 U.S. 310, 316 (1945)). The specific

jurisdiction analysis is divided into three categories, relatedness, purposeful availment, and

reasonableness:

> First, the claim underlying the litigation must directly arise out of, or relate to, the
> defendant's forum-state activities. Second, the defendant's in-state contacts must
> represent a purposeful availment of the privilege of conducting activities in the
> forum state, thereby invoking the benefits and protections of that state's laws and

---

[9] Defendants submitted a declaration stating that 9% of RIH's patients are Massachusetts
residents. [ECF No. 12-4]. While only the facts set forth by Medici should be considered in the
jurisdictional analysis under the prima facie method, Medici has not contested this particular
fact.

making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

Id. (quoting Daynard, 290 F.3d at 60). "An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction." Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999).

First, the relatedness element requires "that the cause of action either arises directly out of, or is related to, the defendant's forum-based contacts." Phillips v. Prairie Eye Ctr., 530 F.3d 22, 27 (1st Cir. 2008) (quoting Harlow, 432 F.3d at 60–61). "There must be more than just an attenuated connection between the contacts and the claim; 'the defendant's in-state conduct must form an important, or at least material, element of proof in the plaintiff's case.'" Id. (quoting Harlow at 61). "Questions of specific jurisdiction are always tied to the particular claims asserted." Phillips Exeter, 196 F.3d at 289. In contract cases, the Court must examine "whether 'the defendant's activity in the forum state was instrumental either in the formation of the contract or its breach.'" Adams v. Adams, 601 F.3d 1, 6 (1st Cir. 2010) (quoting Adelson, 510 F.3d at 49). For tort claims, the Court "probe[s] the causal nexus between the defendant's contacts and the plaintiff's cause of action." Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 9 (1st Cir. 2009) (quoting Phillips Exeter, 196 F.3d at 289). To the extent that the contract and tort claims overlap, as is generally the case here, "the two inquiries begin to resemble each other." Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 10 (1st Cir. 2002).

Medici begins his argument by noting that, through their attorneys, the parties exchanged a large amount of correspondence prior to litigation. During that time, Defendants were represented by counsel in Boston. Medici claims that Defendants' counsel was acting as their agent, and therefore, the Massachusetts long-arm statute (which permits the exercise of personal jurisdiction over a person who acts through an agent) allows the Court to exercise jurisdiction

here. This argument cannot succeed for several reasons. First, the Massachusetts long-arm statute is, of course, constrained by the limits of the Constitution, so the fact that the statute permits service upon an individual acting through an agent is not enough to demonstrate that exercising jurisdiction would be constitutional in this case. Next, the inquiry as to relatedness focuses on whether RIH's conduct in Massachusetts forms a *material element of proof* in Medici's case. Medici's case is primarily based on the contention that the misconduct investigation, which was conducted in Rhode Island, violated his employment contract and federal regulations. The correspondence that Medici exchanged with Boston-based counsel is not material to proving these claims.

Finally, Medici cites to no cases supporting the proposition that retaining counsel located in the forum state is sufficient to establish jurisdiction, nor does the Court believe that such a case exists or that such a holding would be reasonable, in that it would allow a litigant to avoid the requirements of specific jurisdiction simply by bringing a case in the place where the plaintiff wanted to litigate the case. See, e.g., Lothrop, 95 F. Supp. 3d at 97–98 (extensive participation in litigation in forum state not sufficient to confer jurisdiction).

Given that Medici cannot demonstrate relatedness, and specific jurisdiction cannot be established without satisfying all three elements of the inquiry, the Court need not proceed any further. The Court notes, however, that the third element of the inquiry, reasonableness, also disfavors specific jurisdiction.

The reasonableness element of the specific jurisdiction analysis examines five factors known as the Gestalt factors. Those factors are: "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective

resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." <u>Adelson</u>, 510 F.3d at 51. Medici argues that jurisdiction here is reasonable because Medici lives in Massachusetts, RIH is located 51 miles from the federal courthouse in Boston, and RIH is represented by counsel located in Boston and Maine. In addition, Medici points out that, if RIH is dismissed due to lack of jurisdiction, Medici will be faced with pursuing two separate lawsuits, one in Massachusetts and one in Rhode Island.

In this case, the Gestalt factors weigh against litigating this case in Massachusetts. It is true that the burden on RIH to litigate in Massachusetts is probably not heavy, that Massachusetts has an interest in adjudicating a dispute concerning a resident, and that it would be more convenient for Medici to litigate in Massachusetts. On the other hand, all of the events relevant to the dispute occurred in Rhode Island. Most, if not all, of the relevant evidence and witnesses will be located in Rhode Island. Although RIH may be within driving distance of the Boston courthouse, it is much closer to the Rhode Island courthouse, and conversely, it would not be difficult for Medici to travel to Rhode Island to litigate this dispute. To the extent that bifurcating this case would be inefficient, Medici could cure this problem by filing the entire case in Rhode Island. In addition, the fact that RIH retained counsel based in Boston and Portland should have no bearing on the outcome of the jurisdictional question. Finally, Rhode Island has a much greater interest in adjudicating this dispute than does Massachusetts. Thus, the Gestalt factors weigh against a finding that the Court has specific jurisdiction over RIH.

### E. RIH and Lifespan as Alter Egos

Lastly, Medici argues that the Court may exercise jurisdiction over RIH because RIH and Lifespan are "alter egos" of each other, and Lifespan has not contested the Court's jurisdiction over it.

"Ordinarily, courts respect the legal independence of a corporation and its subsidiary when determining if a court's jurisdiction over the offspring begets jurisdiction over the parent." United, 960 F.2d at 1091. The "presumption of corporate separateness [may] be overcome by clear evidence that the parent in fact controls the activities of the subsidiary." Id. (quoting Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 905 (1st Cir. 1980)). Courts have permitted the exercise of jurisdiction over a corporation that is the alter ego or successor of a corporation which is subject to the jurisdiction of the court. Danton v. Innovative Gaming Corp. of Am., 246 F. Supp. 2d 64, 72 (D. Me. 2003). The theory is that, "because the two corporations (or the corporation and its individual alter ego) are the *same entity,* the jurisdictional contacts of one *are* the jurisdictional contacts of the other." Id. (quoting Patin v. Thoroughbred Power Boats Inc., 294 F.3d 640, 653 (5th Cir. 2002)). According to this alter ego rule, "a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." Id. (quoting Russell v. Enter. Rent-A-Car Co. of Rhode Island, 160 F. Supp. 2d 239, 252 (D.R.I. 2001)). In the First Circuit, this has generally been seen as analogous to piercing the corporate veil. See United, 960 F.2d at 1091; Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 27 (1st Cir. 2007).

In Massachusetts, the standard for piercing the corporate veil "is a demanding one." Lothrop, 95 F. Supp. 3d at 100. Corporations are presumed to be "'separate and distinct entities' notwithstanding relationships between them." Id. (quoting Scott v. NG U.S. 1, Inc., 881 N.E.2d 1125, 1131 (Mass. 2008)). The corporate veil "may be pierced only with reluctance and in extreme circumstances when compelled by reasons of equity." Id. There are two scenarios in which the corporate form may be disregarded. Id. "The first is when there is active and direct

participation by the representatives of one corporation, apparently exercising some form of
*pervasive* control, in the activities of another and there is some fraudulent or injurious
consequence of the inter-corporate relationship." Id. (emphasis added) (quoting My Bread
Baking Co. v. Cumberland Farms, Inc., 233 N.E.2d 748, 752 (Mass. 1968)). The second is
"when there is a confused intermingling of activity of two or more corporations engaged in a
common enterprise with substantial disregard of the separate nature of the corporate entities, or
serious ambiguity about the manner and capacity in which the various corporations and their
respective representatives are acting." Id. (quoting My Bread Baking Co., 233 N.E.2d at 752).
Courts considering whether to allow the piercing of the corporate veil consider twelve factors:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of
> business assets; (4) thin capitalization; (5) nonobservance of corporate formalities;
> (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the
> time of the litigated transaction; (9) siphoning away of corporation's funds by
> dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the
> corporation for transactions of the dominant shareholders; and (12) use of the
> corporation in promoting fraud.

Id. at 101. The factors are not formulaically added together, but rather, are considered in their
totality based on the facts presented. Id.

In this case, Medici has proffered evidence indicating that RIH and Lifespan worked
together on matters concerning his employment. Lifespan apparently took on certain
responsibilities related to the misconduct investigation that RIH may have been initially
obligated to perform, since RIH received Medici's federal grant money. In addition, several
individuals serve as officers of both Lifespan and RIH, and the Lifespan and RIH websites
suggest that the corporations have a close working relationship. These facts are not sufficient to
indicate that the corporate veil must be pierced. A strong relationship is not enough to compel
the disregard of separate entities. Lothrop, 95 F. Supp. at 103. In Lothrop, "common ownership

and management as well as cooperation and some sharing of resources" did not prove that there was a "confused intermingling of the corporations and substantial disregard of corporate form." Id. Moreover, that alone would not be enough; there must be equitable considerations that indicate that piercing the corporate veil is necessary to prevent "gross inequity." Id. Here, Medici is unable to demonstrate that Lifespan and RIH disregarded the corporate form, let alone that Medici suffered an injurious consequence of that relationship. Accordingly, the corporate veil cannot be pierced. Thus, the Court cannot exercise jurisdiction over RIH as an "alter ego" of Lifespan.

In the end, given the constraints on the exercise of personal jurisdiction, and despite Medici's arguments in favor of this Court's ability to exercise jurisdiction over RIH, the Court concludes that it does not have jurisdiction over RIH in this case.

## IV.    CONCLUSION

Accordingly, the motion to dismiss [ECF No. 11] is <u>GRANTED IN PART</u>. Rhode Island Hospital is dismissed as a defendant.[10] The case is hereby stayed pending administrative agency review.

**SO ORDERED.**

March 6, 2017                                              /s/ Allison D. Burroughs
                                                          ALLISON D. BURROUGHS
                                                          U.S. DISTRICT JUDGE

---

[10] Should he wish, Medici is granted leave to move for dismissal without prejudice or to transfer the case to the District of Rhode Island.